# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|                                         |   |                           |
|-----------------------------------------|---|---------------------------|
|                                         | : |                           |
|                                         | : |                           |
| DELTA AIR LINES, INC.,                  | : |                           |
|                                         | : |                           |
| Plaintiff,                              | : | CIVIL ACTION NO.          |
|                                         | : | 1:03-CV-2652-RWS          |
| v.                                      | : |                           |
|                                         | : |                           |
| THE SMART FLYER, INC.,                  | : |                           |
| MICHAEL HOLTZ, JEFFREY                  | : |                           |
| TRAUGOT, and DARRYN                     | : |                           |
| WEINSTEIN,                              | : |                           |
|                                         | : |                           |
| Defendants.                             | : |                           |

## ORDER

This case comes before the Court on Delta Air Lines, Inc.'s Motion for

Preliminary Injunction [6-1], Motion of Individual Defendants to Compel

Production of Documents [40-1], Defendant The Smart Flyer's Motion to

Compel Production of Documents [41-1], and Defendants' Motion to Allow

Filing Under Seal [54-1].  Following a review of the record in its entirety, the

Court enters the following Order.

As a preliminary matter, Defendants' Motion to Allow Filing Under Seal [54-1] is **GRANTED nunc pro tunc**. Defendants may file under seal their Supplemental Memorandum in Opposition to Preliminary Injunction pursuant to the Protective Order governing Confidential Material entered in this case on October 27, 2003.

### Background

Plaintiff Delta Air Lines, Inc. ("Delta") brought this action seeking monetary and injunctive relief in connection with Defendants The Smart Flyer, Inc. ("Smart Flyer"), Michael Holtz, Jeffrey Traugot and Darryn Weinstein's (collectively, "Defendants") alleged tortious interference with contractual and business relationships. (See Compl. [1-1].) Specifically, Delta charges that Defendants induce Delta SkyMiles Members (hereinafter, "Members") to breach their contracts with Delta by offering money in exchange for those Members' "SkyMiles." Delta contends that the sale of SkyMiles by Members violates a provision of the SkyMiles Membership Guide and Program Rules (the "Program Rules") providing, in part:

> The sale, purchase or barter of mileage credit,
> vouchers, Award Certificates and Award Tickets
> violates Delta's program rules, is illegal and subjects

2

> the violator to liability for damages and litigation and
> transaction costs.

(See Compl. ¶ 18 Ex. 1 [hereinafter, the "Program Rules"] at 52.)

Defendant The Smart Flyer, Inc. ("Smart Flyer") is a New York company that purchases air travel awards from consumers, obtains tickets with the acquired awards, and then sells such tickets to prospective travelers. The company does not maintain long-term records of its transactions, but rather tracks its daily activities by writing information about its travel awards acquisitions on a dry erase board, and discards paper records of its activities following its sale of tickets to prospective travelers. (Holtz Dep. at 43, 126, 150; Traugot Dep. at 17-18, 94-95.)[1] Its chief executive officer and owner, Michael Holtz, as well as two of its employees, Jeffrey Traugot and Darryn Weinstein, have additionally been named as Defendants in this action.

---

[1]The instant case comes to the Court with a significantly more developed record than that typically available at this stage of proceedings. The deposition testimony cited herein reflects discovery taken in connection with Allison Haas, et al. v. Delta Air Lines, Inc., Case No. 03-CV-0589, pending in the United States District Court for the Southern District of New York. The Haas lawsuit was initiated by Delta SkyMiles Members complaining about Delta's deduction of mileage credit from their accounts due to the Members' alleged violations of the Program Rules' "no sale" prohibition. Because both parties have introduced discovery materials procured in the New York action without objection, the Court considers such materials as part of the record before it on Delta's Motion for Preliminary Injunction.

AO 72A
(Rev.8/82)

Smart Flyer advertises its services in nationwide newspapers such as USA Today, where it states:

**Air Miles Needed**
Top $ Paid
(800) 962-3338

According to Defendants, the target audience for such advertisements includes, although is not restricted to, Delta SkyMiles Members. (Traugot Dep. at 10-12.)

Defendants concede that, at the time they purchased Delta SkyMiles, they were aware that Delta's Program Rules ostensibly prohibit the transfer of such travel awards, as well as Delta's initiation of lawsuits against brokers who induce Members to breach this purported proscription. (Holtz Dep. at 69-73, 100; Traugot Dep. at 40-41.) Nevertheless, Defendants admit that they do not inform callers who express an interest in selling their SkyMiles of these facts, but rather inform such persons that Delta's Program Rules do *not* prohibit Members from selling SkyMiles. (Holtz Dep. at 61-62, 66; Traugot Dep. at 33-35, 44-46.)

Delta initiated the instant action against Defendants seeking injunctive and monetary relief in connection with Defendants' alleged tortious interference with the contractual relations between Delta and its Members. On November 7, 2003, Delta filed a Motion for Preliminary Injunction [6-1], requesting that the

4

Court enjoin Defendants from purchasing or soliciting the purchase of SkyMiles awards or mileage credits, as well as from selling tickets obtained through such conduct. Defendants challenged Delta's entitlement to such relief, arguing that the contractual provision Delta relies on in support of its tort claim is too ambiguous to be enforceable, that they have not interfered with Delta's contractual rights in any legally cognizable sense, and that the "no-sale" restraint is a violation of federal antitrust law. Following its review of the parties' initial submissions, the Court ordered the parties to engage in supplemental briefing regarding whether Delta's "no-sale" rule constituted a vertical restraint on trade in violation of the Sherman Act. (September 30, 2004 Order [51-1].) The parties have now completed this supplemental briefing, and, following its review of the record, the Court enters the following Order.

## Discussion

## I.    Preliminary Injunction

It is settled law in this Circuit that a preliminary injunction is an "extraordinary and drastic remedy[.]" Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985). To obtain such relief, a movant must demonstrate:

(1) a substantial likelihood of success on the merits of

5

> the underlying case, (2) the movant will suffer
> irreparable harm in the absence of an injunction, (3)
> the harm suffered by the movant in the absence of an
> injunction would exceed the harm suffered by the
> opposing party if the injunction issued, and (4) an
> injunction would not disserve the public interest.

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242,

1246-47 (11th Cir. 2002).  Based on its review of the record and parties' briefs,

the Court concludes that Delta has succeeded in making such a showing here,

and the requested preliminary injunction will accordingly be issued.[2]

### A.    Likelihood of Success on the Merits

Delta has demonstrated to the Court a substantial likelihood of success

on the merits in connection with its underlying claim for tortious interference.

Specifically, Delta has shown the Court that Defendants, despite being cognizant

---

[2]Apart from attacking the presence of the foregoing factors, Defendants argue that preliminary injunctive relief is nevertheless inappropriate because granting such relief would disrupt, rather than sustain, the *status quo*.  As Delta correctly observes, however, preliminary injunctions are not relegated to preserving the current state of affairs, and the fact that such an injunction would necessarily alter the *status quo* does not foreclose such relief.  See Parks v. Dunlop, 517 F.2d 785, 787 (5th Cir. 1975) ("[T]he central purpose of a preliminary injunction . . . is to prevent irreparable harm . . . .  Maintenance of the status quo is only  [ ] sometimes concomitant of preventing irreparable harm and never the touchstone for such injunctive relief."); see also Zardui-Quintana, 768 F.2d at 1215 n. 7 (11th Cir. 1985) (stating that a preliminary injunction, unlike a temporary restraining order, is not restricted to maintaining the status quo).

AO 72A
(Rev.8/82)

of Delta's express contractual prohibition on the sale of SkyMiles, induces Members to sell their SkyMiles for substantial sums of money.

Defendants attempt to challenge the underlying merit of Delta's case by advancing two lines of argument. First, relying on state law, Defendants argue that Delta's contractual bar on the sale or barter of SkyMiles is unenforceable due to alleged ambiguities in the language of the contract and Delta's allowance of other entities, such as American Express and Miles4Sale.com, to sell SkyMiles. Moreover, Defendants urge that none of Delta's allegations support a tortious interference claim under Georgia law, and that in any event, Delta has breached its contract by allegedly "flooding" the market with SkyMiles, making their redemption difficult. Second, Defendants argue that Delta's "no sale" rule is violative of federal antitrust laws, constituting both a horizontal anti-competitive conspiracy with other airlines and an unreasonable vertical restraint. The Court addresses these two lines of argument in turn.

7

1. <u>Alleged state law deficiencies in Delta's claims</u>

    a.    <u>Contractual ambiguity, inconsistent application, and Delta's purported breach</u>

Defendants' first argument directed at undermining the likelihood of Delta's success on the merits is that the contractual clause at issue is too ambiguous and inconsistently applied to be enforceable. Again, that section of Delta's Program Rules provides:

> The sale, purchase or barter of mileage credit, vouchers, Award Certificates and Award Tickets violates Delta's program rules, is illegal and subjects the violator to liability for damages and litigation and transaction costs.

(<u>See</u> Program Rules at 52.)

Defendants primary objection to the enforceability of the rule is that it appears to be descriptive, rather than prescriptive, and that the rule's characterization of the transfer of SkyMiles as "illegal" is not supported by any *external* proscription on the sale or barter of such travel awards. Stated differently, Defendants' position is that the cited provision of the Program Rules "does not <u>state</u> the rule; it merely <u>refers</u> to the 'rule[,]' " and that an underlying ban on the transfer of SkyMiles is not present in any extraneous statute,

8

regulation, or provision of the Member's contract with Delta. Consequently, Defendants contend that the provision is ambiguous and not subject to enforcement. The Court finds this contention to be without merit.

The law does not insist on normative clarity for a contractual provision to be enforceable. Rather, a contractual provision is "ambiguous" only when it may be fairly understood in more ways than one. <u>Verret v. ABB Power T & D Co.</u>, 515 S.E.2d 435, 436 (Ga. Ct. App. 1999); <u>see also</u> <u>E. Air Lines, Inc. v. C.R.A. Transp. Co.</u>, 306 S.E.2d 27, 28 (Ga. Ct. App. 1983) ("a contract is not ambiguous, even though difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more permissible meanings represents the true intention of the parties") (<u>quoting</u> <u>Runyan v . Econ. Lab., Inc.</u>, 248 S.E.2d 44 (Ga. Ct. App. 1978)). Here, the cited provision of the Program Rules, while perhaps not the model of contractual clarity, lends itself to no interpretation that a Member's sale or barter of SkyMiles is *permitted*. Stated differently, even without an additional proscription of such transfer elsewhere in the Program Rules or under applicable statute, no Member, upon looking at the clause at issue, could find that the Program Rules actually allows him to sell or barter his SkyMiles. The

contract provision is not too ambiguous to be enforceable.

Second, Defendants argue that Delta's proscription on the transfer of SkyMiles is "dishonest," and that this dishonesty precludes the provision's enforcement. In particular, Defendants point out that Delta itself sells SkyMiles, and permits other affiliates, such as American Express and Miles4Sale.com, to do likewise. The Court finds this argument to be equally unavailing.

The Program Rules, or in their complete title, the SkyMiles Membership Guide and Program Rules, unambiguously governs the relationship between Delta and its SkyMiles Members. It does not purport to restrict Delta from selling SkyMiles in its interactions with third-parties; indeed, the Program Rules themselves advertise Delta's association with such "promotional partners," and the ability of third-parties to award SkyMiles acquired from Delta as an incentive for consuming their services. (Program Rules at 11.) Thus, Defendants' contention that Delta is itself in "violation" of its Program Rules cannot be sustained.

Finally, Defendants argue that Delta has breached some obligation to its Members by introducing such a multitude of SkyMiles to the market that it has become difficult for SkyMiles Members to redeem their SkyMiles for seats.

10

Beyond perfunctory assertions about the increased difficulty in exchanging SkyMiles for air travel, however, Defendants cite no evidence in support of this position, nor do they cite any legal authority (besides the Restatement (Second) of Contracts) to demonstrate how this difficulty could constitute any legally cognizable breach on the part of Delta. Moreover, this argument seems highly problematic for Defendants in light of language in the Program Rules explaining that redemption of SkyMiles may be difficult at times due to consumer demand, and that Delta is free to limit or eliminate "Award seats" on any given flight. (See Program Rules at 16, 51.)

Simply stated, Defendants' contract-based arguments fail to materially detract from Delta's showing that it is likely to succeed on the merits in this action, and do not lay a foundation for denying Delta preliminary injunctive relief.

b.    Tortious interference

Defendants additionally contend that Delta's allegations of tortious interference fail to articulate any cognizable claim under Georgia law. In Georgia, to succeed on a claim for tortious interference a complainant must prove that the defendant:

> (1) acted improperly and without privilege; (2) acted purposefully with malice and the intent to injure; (3) induced the third party not to enter into or continue a business relationship with plaintiff and (4) caused the plaintiff some financial injury.

St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp., 421 S.E.2d 731, 734-35 (Ga. Ct. App. 1992).

Apparently challenging Delta's ability to prove the required purposeful "inducement," Defendants insist that their advertisements to the public state only that Smart Flyer desires to purchase "Air Miles," without specifically referencing Delta's SkyMiles, and that Smart Flyer simply purchases the SkyMiles of Members who are otherwise predisposed to engaging in such sale. Defendants additionally argue that, in any event, they lack the "malicious" intent necessary to prevail on a claim for tortious interference under Georgia law.

Defendants arguments once again fail to persuade the Court that Delta is unlikely to prevail on the merits of its underlying claim. First, their contention that they do not purposefully induce Delta SkyMiles Members to breach their agreements with Delta strains credulity. Defendants have conceded that Delta SkyMiles Members make up at least part of their target audience, and, despite knowing of the Program Rule at issue, falsely tell Members that Delta does not

12

prohibit Members from selling their SkyMiles to third-parties. (Holtz Dep. at 61-62, 66, 69-73, 100; Traugot Dep. at 33-35, 40-41, 44-46.) Such evidence plainly belies the contention that no purposeful inducement exists in this case.

Second, Defendants' contention that their actions are not undertaken with "malice" is predicated on a misunderstanding of that concept under Georgia law. In Georgia, "malice," at least in the context of tortious interference, is not a rigorous hurdle for a complainant to overcome. To the contrary, the element is satisfied so long as the defendant acts with knowledge of the plaintiff's contractual right, and induces breach "for the indirect purpose of injuring the plaintiff or benefitting the defendant at the expense of the plaintiff." Arford v. Blalock, 405 S.E.2d 698, 704-05 (Ga. Ct. App. 1991). As related earlier, Defendants concede that they were aware of Delta's "no sale" Program Rule, and the evidence before the Court reveals that they paid Members to violate that proscription to their profit and Delta's financial detriment. Under these facts, the Court cannot find that Delta has less than a substantial likelihood of prevailing on the merits in this action, at least under Georgia common law. The Court accordingly turns to consider whether Defendants' antitrust defenses sufficiently dampen this likelihood of success.

13

2.    <u>Antitrust defenses</u>

Defendants contend that, notwithstanding any likelihood of success under state law, Delta is nevertheless foreclosed from enforcing its "no sale" rule under federal antitrust law.  Although not clearly denominated as such in Defendants' papers, they appear to argue that Delta's proscription on the transfer of SkyMiles is both the product of an illegal "horizontal" conspiracy among air carriers to quash the secondary market of travel awards exchange, and an impermissible vertical restraint on trade.  After reviewing the parties' papers and the evidence before it, the Court finds that neither argument casts serious doubt on Delta's likelihood of success on the merits.

a.    <u>Horizontal conspiracy</u>

Defendants first contend that Delta's "no sale" restriction is the product of an unlawful horizontal conspiracy among various air carriers to squelch competition in the secondary market of travel awards exchange.  In support of this assertion, Defendants point to unauthenticated documents revealing that travel award brokers were the subject of discussion at meetings of the Frequent Traveler Marketing Association ("FTMA"), of which Delta is a member.  (Mem. in Opp'n to Prelim. Inj. [12-1], Ex. 2.)

14

Without reaching the ultimate viability of such a defense, the Court has little difficulty in concluding that, at this time, the arguments and evidence cited by Defendants do not significantly militate against the award of preliminary injunctive relief. Critically, and as Delta emphasizes in its papers, the uncontradicted evidence reveals that Delta's "no sale" rule was adopted many years before the FTMA meetings cited by Defendants, and that this lawsuit is itself entirely consistent with the legal actions initiated by Delta prior to the meetings in question. Stated differently, Defendants have identified nothing about the underlying rule, this civil action, or, more broadly, the prohibition on transfer of travel awards that suggests collective action on the part of Delta and other airlines to quash the secondary market of travel award exchange.

The sparsity of evidence respecting any collusion between the airlines *vis-a-vis* Delta's adoption and/or enforcement of the "no sale" rule substantially weakens Defendants' attack on Delta's likelihood of success on the merits through reliance on this "horizontal conspiracy" antitrust defense. It is now well established that a Sherman Act conspiracy cannot be inferred from ambiguous evidence that is as consistent with lawful activity as it is with a finding of unlawful collusion among would-be competitors. See <u>Matsushita Elec. Indus.</u>

15

AO 72A
(Rev.8/82)

<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 n.21, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); <u>Holiday Wholesale Grocery Co. v. Philip Morris Inc.</u>, 231 F. Supp. 2d 1253, 1266-71 (N.D. Ga. 2002).  Indeed, the predominant authority Defendants rely on in support of their horizontal conspiracy antitrust defense, <u>In re Northwest Airlines Corp.</u>, 208 F.R.D. 174 (E.D. Mich. 2002), speaks to a situation like the one now before this Court, explaining:

> [I]f the evidence shows only that [airline] Defendants collectively discussed the [banned conduct] . . . and shared information as to their respective prohibitions on the practice, but that they did not agree on a concerted policy or course of conduct with regard to the practice, Plaintiffs' § 1 claim will fail under the authority of <u>Maple Flooring[Manufacturers' Association v. United States</u>, 268 U.S. 563, 45 S. Ct. 578, 69 L. Ed. 1093 (1925)].

208 F.R.D. at 195.  Here, despite having engaged in lengthy discovery in the New York action involving allegations of a similar conspiracy, Defendants have not directed the Court to any evidence suggesting an agreement between Delta and its competitors with respect to the prohibition of the sale or barter of travel awards.  Accordingly, under the foregoing authorities, the Court finds that Defendants' horizontal conspiracy antitrust defense does not significantly discount Delta's likelihood of success on the merits.

16

b.    <u>Vertical restraint</u>

Defendants likewise assert that Delta's "no sale" rule constitutes an

unlawful vertical restraint under § 1 of the Sherman Act.  As explained in this

Court's September 30, 2004 Order, Defendants' original papers, as they relate

to this issue, rested almost exclusively on the decision of the Fifth Circuit in

<u>Eastex Aviation, Inc. v. Sperry & Hutchinson Co.</u>, 522 F.2d 1299 (5th Cir.

1975).  The <u>Eastex</u> decision, affirming a district court ruling that Sperry and

Hutchinson's "Green Stamp" program violated the Sherman Act, was expressly

resolved under the precedent of <u>United States v. Arnold, Schwinn & Co.</u>, 388

U.S. 365, 87 S. Ct. 1856, 18 L. Ed. 2d 1249 (1967), declaring most vertical

restraints *per se* invalid.  <u>See</u> <u>Eastex Aviation, Inc.</u>, 522 F.2d at 1301.  As

Defendants concede, that *per se* rule was later rejected by the United States

Supreme Court in <u>Continental T.V., Inc. v. GTE Sylvania Inc.</u>, 433 U.S. 36, 97

S. Ct. 2549, 53 L. Ed. 2d 568 (1977), which instead held that courts should

apply a "rule of reason" standard in resolving the lawfulness of vertical

restraints.  433 U.S. at 57-58.

In this Circuit, to demonstrate a violation of the antitrust laws under the

"rule of reason" standard requires that the party asserting a violation

17

demonstrate an anticompetitive effect of the accused party's conduct on the

relevant (defined) market, and that such conduct lacks a pro-competitive benefit

or justification. See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel

Communications, Inc., 376 F.3d 1065, 1071 (11th Cir. 2004). Moreover,

> [i]n order to prove an anticompetitive effect on the
> market, the plaintiff may either prove that the
> defendants' behavior had an "actual detrimental
> effect" on competition, or that the behavior had "the
> potential for genuine adverse effects on competition."
> In order to prove the latter, the plaintiff must define
> the relevant market and establish that the defendants
> possessed power in that market.

Maris Distrib. Co. v. Anheuser-Busch, Inc., 302 F.3d 1207, 1213 (11th Cir.

2002).

Defendants' Memorandum in Opposition to Preliminary Injunction failed

to discuss Delta's "no-sale" rule under this analytical framework, and

additionally failed to cite any legal authorities supporting their view of the

relevant market, Delta's market power within that market, or any cognizable

effects on competition that would lay the foundation for an antitrust violation.

(See Mem. in Opp'n to Prelim. Inj. [12-1] at 13-14.) These deficiencies in

Defendants' original submission did not provide the Court with an adequate

AO 72A
(Rev.8/82)

basis to evaluate the impact of their "vertical restraint" antitrust defense on

Delta's probability of success on the merits.  In light of the extraordinary nature

of preliminary injunctive relief, however, the Court permitted Defendants to

submit supplemental briefing to assert their contentions under the "rule of

reason" framework articulated by the Eleventh Circuit in Maris Distributing Co.,

302 F.3d 1207.

Notwithstanding this Court's Order, Defendants' supplemental papers are

directed almost exclusively at attempting to bolster their "horizontal conspiracy"

antitrust defense, and pay little attention to the sole issue on which the Court

requested additional briefing.  Defendants have entirely failed to address the

issue of whether the subject prohibition on the transfer of SkyMiles is unlawful

under the "rule of reason" framework adopted by the Eleventh Circuit, or to

respond to any of the deficiencies identified by this Court in its September 30,

2004 Order.  In light of the foregoing, this Court is left with an inadequate

foundation on which to evaluate the merit of Defendants' vertical restraint

defense, and will not deny Delta injunctive relief based on a defense of uncertain

viability.  Accordingly, the Court's determination that Delta has a substantial

probability of success on the merits remains undisturbed, and the Court finds

that Delta has met this prong of its burden under four-part preliminary injunction inquiry.

**B.      Irreparable Harm**

The Court additionally finds that Delta would suffer irreparable harm in the absence of an injunction.  Defendants have expressed their intention to continue engaging in the purchase and "turnover" of SkyMiles were an injunction not to issue.  (Holtz Dep. at 99.)  Such continuance threatens Delta with several distinct, legally cognizable injuries.

Most plainly, Delta will suffer the loss of control over its own SkyMiles program if Defendants are permitted to continue soliciting Members to sell their SkyMiles in contravention of Delta's Program Rules.  Such a loss of control, even when not tied directly to verifiable monetary harm, can sustain the issuance of injunctive relief in a movant's favor.  Cont'l Airlines, Inc. v. Intra Brokers, 24 F.3d 1099, 1105 (9th Cir. 1994).

In addition, there is substantial evidence that it is exceedingly difficult for Delta to detect the sale of SkyMiles, as well as to identify tickets (allegedly) unlawfully acquired through sold or bartered travel awards.  Indeed, Defendants' activities have exacerbated this difficulty; there is evidence that

Defendants have stopped using employee credit cards to purchase the awards, making detection of the original sales unlikely, as well as evidence that Defendants routinely discard any evidence of their transactions shortly after each transaction closes.  (See Holtz Dep. at 43, 48-49, 126, 150; Traugot Dep. at 17-18, 23-25, 94-95.)  This difficulty in detection, and the resultant position of Delta in which it must either risk failing to honor legally procured tickets, or endure the use of tickets obtained in violation of its Program Rules, additionally lays the foundation for injunctive relief.  Bitterman v. Louisville & Nashville R.R. Co., 207 U.S. 205, 28 S. Ct. 91, 52 L. Ed. 171 (1907) (in a suit brought to enjoin ticket brokers from dealing in nontransferable reduced rate railroad excursion tickets, Court issued injunction emphasizing, *inter alia*, "the risk to result from mistakes in enforcing the forfeiture provision" associated with nontransferable tickets).

Moreover, even in situations where Delta refuses to honor the ticket of a traveler who has indeed obtained her ticket through use of sold or bartered SkyMiles, Delta must suffer the loss of goodwill associated with such a refusal. As Delta emphasizes in its papers, many such ticket holders could believe that they have purchased a legitimate ticket, and Delta should not be saddled with the

21

unenviable choice of either alienating its would-be passengers or enforcing its Program Rules.  Cf. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998) (loss of goodwill a cognizable injury for purposes of preliminary injunction analysis).

Defendants do not challenge the existence or severity of the aforementioned harms in their papers, nor do they contend that such harms are not legally cognizable.  Rather, Defendants' only challenge to the "irreparable injury" prong of Delta's argument is that the existence of any *financial* injury to Delta as a result of their brokerage activities remains the subject of debate. Without purporting to resolve that issue here, the Court concludes that the foregoing consequences of Defendants' enterprise on Delta adequately lay the foundation for the issuance of injunctive relief, and that Defendants' assertion that Delta suffers no direct economic injury cannot avoid such an injunction.

### C.    Balancing the Harms

Furthermore, the Court concludes that the harm to Delta in the absence of an injunction outweighs the harm to Defendants should the injunction issue. Defendants only argument as to this prong of the preliminary injunction inquiry is that such an injunction would injure it by "curtail[ing] a substantial portion of

22

Smart Flyer's business." They do not contend that the purchase and redemption of Delta SkyMiles constitute even a majority of Smart Flyer's activities, and there is no indication that an injunction would put Defendants entirely out of operation.

Moreover, the Court finds it noteworthy that Defendants' brokerage endeavor was not pursued in ignorance of Delta's ostensible prohibition on the sale or barter of SkyMiles–to the contrary, the evidence shows that Defendants were well aware of the relevant "no sale" proscription as well as Delta's pursuit of brokers attempting to induce a breach of that proscription in litigation. (Holtz Dep. at 69-73, 100; Traugot Dep. at 40-41.) Defendants' willingness to undertake their course of action in the face of this appreciable risk of legal action substantially ameliorates any cognizable harm to Smart Flyer's business as the result of an injunction. Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 903 (7th Cir. 2001) ("in assessing Defendant's irreparable harm the court excludes the burden [Defendant] voluntarily assumed by proceeding in the face of a known risk") (internal quotations omitted).

### D.    Public Interest

The final demonstration required from a litigant seeking a preliminary

injunction is that "an injunction would not disserve the public interest." <u>Johnson & Johnson Vision Care, Inc.</u>, 299 F.3d at 1246-47. As Delta points out in its papers, precluding Defendants from misrepresenting the content of Delta's Program Rules to consumers, and issuing tickets to such prospective travelers that are subject to confiscation, is well aligned with the interest of the public. Although Defendants insist that enjoining their operation will lessen competition, the Court finds this argument, without a more persuasive showing that there is anything unlawful about Delta's "no sale" restriction, to be insufficient to foreclose the issuance of a preliminary injunction.

In sum, the Court finds that Delta has demonstrated a substantial likelihood of success on the merits, that it will suffer irreparable harm in the absence of the requested injunction, that this harm outweighs that to Defendants should an injunction issue, and that the sought injunction would not disserve the public interest. Accordingly, Delta Air Lines, Inc.'s Motion for Preliminary Injunction [6-1] is **GRANTED**. Defendants are prohibited from purchasing or soliciting the purchase of Delta SkyMiles awards or mileage credit and from selling the tickets they obtain through this conduct.

## II.     Defendants' Motions to Compel

AO 72A
(Rev.8/82)

Defendants have filed two Motions to Compel seeking production of documents from Delta. While Defendants identify thirteen requests for which they ask this Court to compel Delta's document production, the separately enumerated requests can be better understood as falling into only two conceptually distinct categories. First, Defendants request that Delta be compelled to produce documentation relating to revenues it received from selling or issuing SkyMiles, including a broad range of information regarding Delta's business relationship with American Express, as well as with other "partners" and airlines with which Delta permits Members to use their SkyMiles to obtain airfare. (Individual Defendants' Req. for Produc. Nos. 2, 4, 6, 7, & 9; Smart Flyer's Req. for Produc. Nos. 18, 19, 26, 30, 37-40.) Second, Defendants seek documents showing the cost, by category, that Delta incurs for air transportation provided in exchange for SkyMiles. (Smart Flyer's Req. for Produc. No. 34.)

As amended in 2000, Federal Rule of Civil Procedure 26 limits discovery to matters that are "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). This represents a narrowing of permissible discovery from that allowed under the previous iteration of the Rule, which instead permitted

discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." In addition, the Rule requires that the federal courts limit otherwise permissible discovery in circumstances where the court concludes that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive[,]" or that "the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(i) & (iii). With these principles as a foundation, the Court addresses the two categories of requests before it.

## A. Revenues Related to SkyMiles and Relationship with Partners

As it relates to the instant motions to compel, the great weight of Defendants' requests for production deals with revenues Delta received or receives for issuing SkyMiles, and Delta's relationship with "partners" through which it distributes and/or permits the consumption of SkyMiles. In arguing that those matters are properly the subject of discovery, Defendants advance three lines of argument. First, Defendants argue that evidence of Delta's sale of SkyMiles to others, or its acquiescence in such sales by third-parties, reveals its

own breaches of contract, disallowing its enforcement of the "no sale" prohibition at issue. Second, Defendants take the position that such information is generally necessary to show that "the SkyMiles program has turned into a general consumer premium and credit card program designed to generate cash for Delta[,]" and to develop "a complete understanding of the economics of the program, including the amount of cash received from various sources." Finally, they contend that such information is relevant to the issue of damages–*i.e.*, the extent to which Delta's recovery, if any, should be discounted by the profits it realized in connection with the SkyMiles used to purchase the subject tickets, as well as the amount to which Defendants would be entitled should they prevail on their counterclaim for conversion of their confiscated SkyMiles.

The Court finds Defendants' first two arguments insufficient to sustain the subject motions to compel. As it relates to Defendants' first argument, Defendants' suggestion that the requested discovery is necessary to illustrate Delta's own breaches of contract cannot sustain the compelled production of such documents. As explained above, the "no sale" provision Defendants contend Delta "breached" in selling SkyMiles to third-parties is, by its unambiguous terms and context, limited in application to Members. Because

there is no contractual basis for Defendants' argument, the compelled production of documents on this ground is likewise unwarranted.

Additionally, the Court cannot agree that the requested production should be compelled because the information sought is generally necessary to show that "the SkyMiles program has turned into a general consumer premium and credit card program designed to generate cash for Delta[,]" and to develop "a complete understanding of the economics of the program, including the amount of cash received from various sources." In the most abstract sense, the Court appreciates that the documents sought to be compelled could shed light on these issues. Nevertheless, Defendants offered only the most perfunctory assertion that these purported characteristics of the SkyMiles program are relevant to the claims and defenses at issue in this litigation. (Mot. to Compel the Produc. of Docs. and Mem. of Law in Supp. at 9-10.) Without directing the Court to any clear nexus between these ostensible attributes of the program and elements of any claim or defense, this argument likewise does not warrant the compelled production of the documents Defendants seek.

Nevertheless, in evaluating Defendants' final argument, the Court is persuaded that Defendants are entitled to certain documents illustrating the

consideration paid by third-parties to Delta for its SkyMiles. Although the Court is inclined to agree with Delta that, if it succeeds in this litigation, it will be entitled to the full face value of the tickets it issued in exchange from the sold or bartered SkyMiles, the value paid by Delta for the SkyMiles could prove relevant in ascertaining the proper award of damages to Defendants should they prevail on their conversion counterclaim. Moreover, while Delta has indicated its willingness to stipulate that it receives, for all SkyMiles, an amount it contends is the highest price paid by any third-party for the same (a stipulation that would put Defendants in a superior position with respect to damages), Defendants should not be forced to rely blindly on Delta's representation regarding the highest sum it receives for its SkyMiles from any third-party. Thus, production with respect to the consideration Delta receives from third-parties for its SkyMiles will be compelled.

That is not to say, however, that this Court does not appreciate the valid commercial concerns Delta raises in its papers, suggesting that divulging the consideration paid by each of its many partners for SkyMiles has the potential to put Delta in a significantly disadvantageous negotiating position *vis-a-vis* those partners who pay, or would be willing to pay, a relatively high sum for

SkyMiles. To the contrary, the Court acknowledges that these materials are commercially sensitive, and that upmost care must be taken to avoid the public disclosure of the information contained therein. Consequently, this Court will permit Delta to designate any production concerning this issue as "Highly Confidential - Attorney Eyes Only" in accordance with the Protective Order entered by this Court on October 27, 2003 [8]. Upon receiving this information from Delta, counsel for Defendants shall have the opportunity to confirm whether Delta's representation regarding the highest value received from third-parties for its SkyMiles is accurate, and, if confirmed, the parties may stipulate to that fact.

Accordingly, with respect to the Individual Defendants' Request for Production of Documents No. 9, as well as Smart Flyer's Request for Production of Documents Nos. 18, 30, 38, 39 and 40, Defendants' motions to compel will be denied. Conversely, Defendants' motions to compel will be granted insofar as they request production in connection with the Individual Defendants' Request for Production of Documents Nos. 2, 4, 6, and 7, as well as Smart Flyer's Request for Production of Documents Nos. 19, 26, and 37. With respect to all requests for which production is being compelled (most

notably, Individual Defendants' Request for Production of Documents No. 7, and Smart Flyer's Request for Production of Documents Nos. 19 and 37, all of which could be construed to seek a more sweeping array of materials), Delta is required to produce documents only to the extent such documents illustrate the consideration it received or receives from third-parties for its SkyMiles. Furthermore, all documents produced in response to this Order may be designated by Delta as "Highly Confidential - Attorney Eyes Only" in accordance with the Protective Order entered by this Court on October 27, 2003 [8].

**B.      Cost of Providing Transportation**

Defendants additionally seek documents showing the cost, by category, that Delta incurs for air transportation provided in exchange for SkyMiles. (Smart Flyer's Req. for Produc. No. 34.) Delta responded to this request for production by stating that it has already produced such information in the litigation taking place in the District Court for the Southern District of New York, and contending that, in any event, such information is not relevant to this litigation.

In its Motion to Compel, the Smart Flyer states that the information

AO 72A
(Rev.8/82)

produced by Delta consisted of "an artificial accounting legerdemain showing its 'liability' for miles credited to Participant accounts[,]" and states that the ledger does not relate the "actual cost of providing service."  Beyond this general accusation, however,  Smart Flyer has not identified any way in which the accounting statement fails to satisfy its request for production.  Moreover, Defendants have left unanswered Delta's contention that this request was never raised in any discovery conference between the parties, and it appears to the Court that Defendants have failed to confer with Delta regarding this request as mandated by the Federal Rules.  See Fed. R. Civ. P. 37(a)(2).  Accordingly, insofar as the Smart Flyer seeks compelled production in connection with its Request for Production No. 34, its Motion to Compel will be denied.

In sum, the Motion of Individual Defendants to Compel Production of Documents [40-1] and Defendant The Smart Flyer's Motion to Compel Production of Documents [41-1] are **GRANTED in part and DENIED in part**.  With respect to the Individual Defendants' Request for Production of Documents No. 9, as well as Smart Flyer's Request for Production of Documents Nos. 18, 30, 34, 38, 39 and 40, Defendants' motions to compel are **DENIED**.  Conversely, such motions are **GRANTED** insofar as they seek

32

production in connection with the Individual Defendants' Request for Production of Documents Nos. 2, 4, 6, and 7, as well as Smart Flyer's Request for Production of Documents Nos. 19, 26, and 37.  As it relates to all requests for which production is being compelled, Delta is obligated to produce documents only to the extent such documents illustrate the consideration it received or receives from third-parties for its SkyMiles.  Moreover, all documents produced in response to this Order may be designated by Delta as "Highly Confidential - Attorney Eyes Only" in accordance with the Protective Order entered by this Court on October 27, 2003 [8].

## Conclusion

Delta Air Lines, Inc.'s Motion for Preliminary Injunction [6-1] is **GRANTED**.  Defendants are prohibited from purchasing or soliciting the purchase of Delta SkyMiles awards or mileage credit and from selling the tickets they obtain through this conduct.

Defendants' Motion to Allow Filing Under Seal [54-1] is **GRANTED nunc pro tunc**.  The Motion of Individual Defendants to Compel Production of Documents [40-1] and Defendant The Smart Flyer's Motion to Compel

AO 72A
(Rev.8/82)

Production of Documents [41-1] are **GRANTED in part and DENIED in part**. With respect to the Individual Defendants' Request for Production of Documents No. 9, as well as Smart Flyer's Request for Production of Documents Nos. 18, 30, 34, 38, 39 and 40, Defendants' motions to compel are **DENIED**. Conversely, such motions are **GRANTED** insofar as they seek production in connection with the Individual Defendants' Request for Production of Documents Nos. 2, 4, 6, and 7, as well as Smart Flyer's Request for Production of Documents Nos. 19, 26, and 37. As it relates to all requests for which production is being compelled, Delta is obligated to produce documents only to the extent such documents illustrate the consideration it received or receives from third-parties for its SkyMiles. Moreover, all documents produced in response to this Order may be designated by Delta as "Highly Confidential - Attorney Eyes Only" in accordance with the Protective Order entered by this Court on October 27, 2003 [8].

      **SO ORDERED** this __18th__ day of November, 2004.


                    /s/ Richard W. Story
                    RICHARD W. STORY
                    UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)